**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MICHELLE ORTEGA,

    Plaintiff,

vs.                                                       No. CR 05-01236 JB/RHS

DISTRICT ATTORNEY RICHARD FLORES,
the FOURTH JUDICIAL DISTRICT ATTORNEY'S
OFFICE, and THE STATE OF NEW MEXICO,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed May 22, 2006 (Doc. 15). The primary issue is whether the Plaintiff Michelle Ortega has established a genuine issue of material fact requiring a trial in this case. Because the Court believes that Ortega has not presented evidence sufficient to establish a genuine issue of material fact regarding the expectation of a property interest in her employment, the Court will partially grant the motion and enter summary judgment on behalf of the Defendants with respect to Ortega's § 1983 claims. The Court will remand the remaining state claims back to state court.

**FACTUAL BACKGROUND**

Ortega was hired for a secretarial position in the Fourth Judicial District Attorney's Office on July 14, 2003, while Matthew Sandoval was the District Attorney. See Affidavit of Michael J. Sandoval ¶ 1, at 1 (executed August 28, 2006), filed September 22, 2006 (Doc. 29). The District Attorney's Office had received a special legislative appropriation to prosecute death penalty cases arising from the murder of a prison guard. See id. ¶ 2, at 1. The District Attorney's Office asked

for and received permission from the Legislative Finance Committee to hire and pay Ortega with the special appropriation to work as a "term" secretary in the Victims' Assistance Unit, and to move an experienced, "covered" secretary, paid with general monies, into the Death Penalty Unit. Id. ¶ 2, at 1-2. Ortega was paid solely out of the special appropriation for the duration of her employment. See id. ¶ 4, at 2.

Upon beginning at the District Attorney's Office, Ortega was given an orientation that explained, among other things, that employees of the District Attorneys' Offices were considered state employees but that, by law, they operated under a separate and agency specific employment plan, the District Attorneys' Personnel and Compensation Plan, and the direct relationship between special appropriation funding and a term appointment – that a term appointment expires when its specially allocated funding runs out or is transferred elsewhere and that, at such time, term employees, unlike covered employees, do not have the ability to appeal their termination. See Exhibits to Defendants' Memorandum in Support of Summary Judgment, filed May 22, 2006 (Doc. 17)("Defendants' Exhibits"), Exhibit M, Affidavit of Ruth Trujillo ¶ 6, at 2 (executed May 12, 2006). After the orientation, Ortega signed and dated a form that all term appointees are required to sign, acknowledging that term status had been explained to her and indicating that she understood and accepted the position as set out to her. See id. The form reads:

> I, Michelle Ortega, do hereby accept the position of Secretary for the Fourth Judicial District Attorney. I further understand that the position I hold as a Supervising Secretary is a term position and that my employment is contingent upon funding from fiscal year to fiscal year, due to special funding.

Defendants' Exhibits, Exhibit A, Signed Term Appointment Acknowledgment Form of Michelle Ortega at 1.

While Ortega was employed at the District Attorney's Office, regular staff meetings were held in which the District Attorney would report to the staff about matters concerning their jobs and special funding; employees had the opportunity to ask questions at these meetings. See Trujillo Affidavit ¶ 10, at 3. After Flores defeated Sandoval in the 2004 District Attorney's race, but before Flores took office, Sandoval met with Ortega and asked if she wanted to move from her term position to a general fund position. See Defendants' Exhibits, Exhibit L, Affidavit of Sonia Valdez ¶ 4 at 1-2 (executed May 3, 2006). Ortega declined without questioning her status as a term employee. See id.

When District Attorney Flores assumed office in January 2005 he was concerned that a conflict might exist because he had worked representing one of the death penalty defendants he was now charged with prosecuting. See Defendants' Exhibits, Exhibit J, Affidavit of Richard D. Flores ¶ 2 at 1-2 (executed May 3, 2006). After assessing the matter with the State Attorney General, it became clear that there was a conflict and that the death penalty cases would need to be transferred out of the Fourth Judicial District Attorney's Office. See id. ¶¶ 2-3, at 1-2. During his first week in office, Flores notified Ortega that the cases would be transferred and that, once that occurred, she would no longer be an employee at the District Attorney's Office because her funding source would no longer be with the office. See id. ¶ 10, at 4-5. At that time, Ortega did not question her term status or appear surprised that a loss of the death penalty funding meant the loss of her position. See id. ¶ 11, at 5.

On February 11, 2005, Flores gave Ortega a Notice of Termination letter based upon the death penalty cases and funding being "conflicted out" of the Fourth Judicial District Attorney's Office. See id. ¶ 13, at 5. Ortega sent Flores a letter on February 23, 2005 requesting a hearing on

her termination. See id. ¶ 14, at 5-6. Flores, responding by letter on February 25, 2005, replied that Ortega knew she was a term employee, that her position was contingent on continuing funding, and that, as a term employee, she was not entitled to any formal hearing or appeal regarding the expiration of her term appointment. See id. ¶ 14, at 5-6. Ortega sent Flores one more letter, dated April 11, 2005, protesting her termination and stating that she was a protected and not an at-will employee. See id. ¶ 15, at 6.

## PROCEDURAL BACKGROUND

On October 28, 2005, Ortega filed suit in the New Mexico Fourth Judicial District against Flores, the Fourth Judicial District Attorney's Office, and the State of New Mexico seeking damages for breach of contract and civil rights violations. See Complaint ¶ 24-33, at 4-5, filed October 28, 2005. The Defendants subsequently removed the case from state court to federal district court. See Notice of Removal at 1, filed November 25, 2005 (Doc. 1). Ortega alleges that she was a covered employee under N.M. CODE R. § 10.4 and the District Attorneys' Personnel and Compensation Plan, and that the Defendants breached her employment contract when Flores terminated her without "just cause," without following "Formal Disciplinary Procedure," and without an opportunity to be heard. Id. at 3-4. Ortega further alleges, under 42 U.S.C. § 1983, that the Defendants violated her right to due process by terminating her without an opportunity to be heard. See id. at 4-5.

Defendants moved for summary judgement on May 22, 2006. See Motion for Summary Judgement at 1, filed May 22, 2006 (Doc. 15). Ortega responded by contending that her claims must be understood in the context of her belief that she was a covered employee and contesting the assertion that her position was funded with the special appropriation for the death penalty cases. See Plaintiff's Memorandum in Opposition of Summary Judgment on the Basis of Qualified Immunity and

on Other Grounds at 6-7, filed June 14, 2006 (Doc. 18)("Memorandum in Opposition"). Ortega bases her contestation regarding how her employment was funded on the fact that the topic was not discussed in Flores' January 7, 2005 letter to State Attorney General Patricia Madrid concerning his possible conflict of interest with the death penalty cases. See id.; Memorandum in Opposition, Exhibit H, Letter from District Attorney Flores to Attorney General Madrid at 1-2 , dated January 7, 2005 ("January 7 Letter from Flores to Madrid"). Ortega also maintains that the Court should not consider the deposition responses in which she acknowledged that a term employee's position is tied to special funding, that once that funding runs out the term appointee's position is terminated, and that a term employee terminated in such a manner does not have a right to appeal, because the questions were posed in a hypothetical fashion. See Memorandum in Opposition at 7-8; Defendants Exhibits, Exhibit H, Deposition of Michelle Ortega at 43: 11-17, 47: 9-25 (taken February 9, 2006) ("Ortega Deposition"). Further, in her response to the Defendants' Motion for Summary Judgment, Ortega alleges that a new employment contract was established, one succeeding the contract that her initial orientation and signing of the term appointment acknowledgment form created, when she signed an agreement to abide by the "employee handbook." Memorandum in Opposition at 4. Ortega, however, does not point to any affidavit or deposition testimony that supports her claim that she signed such an agreement or how and why doing so would supersede her original term arrangement. See id. Ortega does not dispute any other material facts.

### LAW REGARDING SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, togther with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50. Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The court may only consider admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir.1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995). Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact." Id. "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324.

**LAW REGARDING STATE GOVERNMENT EMPLOYMENT CONTRACTS**

"Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." N.M. STAT. § 37-1-23(A). Ordinarily, for there to be a legally

enforceable contract, an offer, an acceptance, consideration, and mutual assent must factually support an agreement. See Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 731, 918 P.2d 7, 10 (1996). In the employment context, those elements are satisfied when an employer offers a prospective employee a position, that prospective employee accepts and proceeds to carry out, as an employee, the specific tasks required in service of the employer, and the employer compensates the employee for doing so. See id.

Written employment contracts can either be express or implied-in-fact. See Cockrell v. Bd. of Regents of N.M. State Univ., 132 N.M. 156, 167, 45 P.3d 876, 887 (2002); Garcia v. Middle Rio Grande Conservancy Dist., at 121 N.M. 731-32, 918 P.2d 7, 10-11. A written personnel manual gives rise to an implied contract if it controls the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlines. See Cockrell v. Bd. of Regents of N.M. State Univ., 132 N.M. 156, 167, 45 P.3d 876, 887 (2002). In addition, section 37-1-23(a) incorporates implied employment contracts that include written terms set forth in personnel manuals. See Garcia v. Middle Rio Grande Conservancy Dist., at 121 N.M. 732, 918 P.2d 11 (holding that the Middle Rio Grande Conservancy District's Personnel Policy, which contained provisions relating to most every aspect of the employment relationship, including job description, compensation, leave, termination, and administrative appeals, amounted to an implied contract and a valid written contract under Section 37-1-23(A)).

**LAW REGARDING EMPLOYMENT AT DISTRICT ATTORNEYS' OFFICES**

N.M. STAT. §§ 36-1A-1 to -15, N.M. CODE R. § 10.4 and the New Mexico District Attorneys' Personnel and Compensation Plan, which incorporates § 10.4, govern employment matters at District Attorneys' Offices. With regard to the appointment of covered employees, the

Administrative Code, in relevant part, states: "A covered employee is a person appointed to a full-time or part-time covered position who has successfully completed the probationary period and is covered by all provisions of the District Attorney Personnel and Compensation Act and these rules." N.M. CODE R. § 10.4.4.10. With respect to appointment of term employees, the Code provides that:

> A. A term appointment is the employment of a person in a position for a designated length of time in a specific program of project, such as a one-time federal project or a pilot program which exceeds the normal six (6) month limitation for temporary appointments.
>
> B. Employees in term appointments shall serve a six (6) month probationary period and may be terminated at will by the district attorney during such period.
>
> C. Employees in term appointments who complete the probationary period satisfactorily have all of the privileges of covered employees, <u>except the right to appeal the expiration of appointment</u>.
>
> D. <u>The duration of term appointments is totally dependent upon the funding for the program or project</u>. Whenever funds are discontinued or no longer available, or upon completion of the program or as otherwise determined by the district attorney, these employees will be terminated from the district attorney's service.
>
> E. Employees accepting a term appointment, including a covered employee who accepts a promotion or a transfer into a term position, <u>shall sign a statement indicating that he/she understands and accepts the conditions of the term appointment</u>.
>
> F. The expiration of term appointments shall not be considered to be a layoff or a disciplinary action within the meaning of these rules.
>
> G. Compensation and salary increases for term employees are contingent on funding for that program or project.

N.M. CODE R. § 10.4.4.11 (emphasis added).

## LAW REGARDING § 1983 CLAIMS ALLEGING VIOLATIONS OF DUE PROCESS

The evaluation of a claim brought under 42 U.S.C. § 1983 alleging a deprivation of procedural due process in violation of the Fourteenth Amendment involves a two-step inquiry. First,

it must be determined whether the individual asserting the claim possessed a protected interest to which due process protection was applicable. See Copelin-Brown v. N.M. State Pers. Office, 399 F.3d 1248, 1254-55 (10th Cir. 2005). Second, if a protected interest is established, it must be decided whether the individual was accorded an appropriate level of process. See id. The United States Constitution does not create property interests; rather, independent sources, such as state law, create them. See id. For example, when a person's employment may only be terminated for specified reasons, his expectation of continued employment is sufficient to require the protections of the Fourteenth Amendment. See id. In general, once such a protected property interest is established, at least a post-termination hearing is required. See id.

Suits brought under § 1983 against states, extensions of states, such as departments and agencies, and individual state officials in their official capacities are barred by sovereign immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). Further, official persons sued in their individual, as opposed to official, capacities may posses qualified immunity from § 1983 claims. A plaintiff can overcome a qualified immunity defense if the court decides that the plaintiff has asserted a violation of a constitutional or statutory right, and that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right. See Copelin-Brown v. N.M. State Pers. Office, 399 F.3d at 1256.

## ANALYSIS

Some preliminary discussion is warranted before the Court analyzes Ortega's claims and the Defendants' motion for summary judgement. First, the Court does not believe Ortega's contention that, based upon the topic of her position's funding being omitted from District Attorney Flores' letter to Attorney General Madrid, the source of funding for her position is a contested fact. The letter at

issue was written to alert and seek advice from the Attorney General with respect to a potential conflict of interest regarding the death penalty cases that Flores was concerned about. See January 7 Letter from Flores to Madrid at 1-2. It is not material that such a letter was sent without discussing funding particularities. Moreover, beyond pointing to the letter, Ortega does not cite any other evidence to refute the multiple witnesses who maintain that she was hired with and paid solely from the special death penalty appropriation. See Memorandum in Opposition at 2-3; Sandoval Affidavit ¶ 4, at 2; Trujillo Affidavit ¶ 7, at 2-3; Defendants' Exhibits, Exhibit K, Affidavit of Mary Lou Umbarger ¶ 2, at 1 (executed May 2, 2006); Flores Affidavit ¶ 9, at 4. As such, the Court will consider Ortega's having been hired and paid during her tenure from the special appropriation as an uncontested fact.

Second, Ortega's own statements provide support for the uncontested fact. But even if the Court were to disregard Ortega's deposition statements regarding term appointees because they were based on hypothetical questions, the Court does not believe that a genuine issue as to any material fact would be created, and, so, the Court need not rely, solely or in part, on those statements in its summary judgement analysis.

Finally, the Court will not treat Ortega's argument in her brief that a new employment contract supplanting her initial term appointment was formed as a genuinely disputed material fact. Ortega does not designate any specific facts contained in affidavits, depositions, admissions on file, answers to interrogatories, or anything else concerning the creation of a new contract. Ortega does not present any facts with regard to when and why she signed a new agreement to follow the employee handbook, what, if anything, she understood doing so to mean, and how that employee handbook differs from the District Attorneys' Personnel and Compensation Plan, which contains

provisions regarding term appointments, that she acknowledged in the form she signed following her initial orientation.

## I. THE DEFENDANTS' REFUSAL TO ALLOW ORTEGA TO APPEAL HER TERMINATION DID NOT DEPRIVE HER OF A RIGHT TO DUE PROCESS.

Ortega's due process claims against the State of New Mexico and the Fourth Judicial District Attorney's Office cannot stand because suits cannot be brought against states and the arms of states under § 1983.

With respect to Ortega's due process claim against Flores, because, under the applicable contract and state law provisions, Ortega did not possess a protected interest, no due process was due to her regarding her termination. The valid written contract under which the government may be sued in this instance is comprised of the form that Ortega signed acknowledging her understanding and acceptance of term status, an express element, and, because it was a written personnel manual that controlled the employer-employee relationship and Ortega could have reasonably expected the Defendants to conform to the procedures it outlined, the District Attorneys' Personnel and Compensation Plan, which incorporates N.M. CODE R. § 10.4, an implied-in-fact element. Under the terms of that employment contract, Ortega was a term appointee whose employment was totally dependent upon the funds from the special death penalty appropriation. See N.M. CODE R. § 10.4.4.10(D); Defendants' Exhibits, Exhibit A, Signed Term Appointment Acknowledgment Form of Michelle Ortega, at 1. Further, pursuant to the contract, after Ortega satisfactorily completed her six-month probationary period, she accrued all of the privileges of a covered employee, "except the right to appeal the expiration of employment." N.M. CODE R. § 10.4.4.10(D). Thus, under her employment contract, Ortega, as a term employee, could be terminated without an opportunity to

appeal and should have expected to be terminated when her funding source expired or was transferred out of the Fourth Judicial District Attorney's Office.

As such, Ortega did not have an expectation of continued employment and, therefore, did not have a protected property interest. Because Ortega has not established that her employment as a term appointee was a protected property interest, she has not demonstrated that she was entitled to due process, and, thus, there is no need for the Court to determine whether she was accorded an appropriate level of due process.

Further, because Ortega has not shown that she is entitled due process, qualified immunity protects District Attorney Flores in this instance.

The Defendants have met their burden by showing that there is an absence of evidence to support Ortega's case -- the terms of Ortega's employment contract do not support her claims that her constitutional right to due process was violated. Ortega, on the other hand, has failed to meet her burden of opposing summary judgment; she has not presented specific evidence, by affidavit, deposition, answers to interrogatories, or admissions on file, sufficient for a jury to return a verdict in her favor. As such, the Defendants are entitled to judgment as a matter of law with respect to the § 1983 claims.

## II.    THE COURT WILL REMAND THE REMAINING STATE-LAW CLAIMS TO THE STATE COURT.

This Court has supplemental jurisdiction over Ortega's remaining state-law claims pursuant to 28 U.S.C. § 1367. The decision to exercise supplemental jurisdiction is within the Court's discretion. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988); Archuleta v. Lacuesta, 131 F.3d 1359, 1368 n.4 (10th Cir. 1997). There are no remaining federal claims. The remaining

state claims will require interpretation and application of state statutes and local rules that are better left to state court. In addition, the Court recognizes that Ortega originally filed this case in state court and that it was the Defendants who removed it on the basis of federal question jurisdiction; remanding this case to the state court would return it to the forum that Ortega selected. The Court will, therefore, remand the remaining state-law claims for the state court to decide. Thus, the Court need not address the three motions before it.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is granted in part and denied in part. The Court will order judgment in favor of the Defendants on Ortega's § 1983 claims. The Court will order that the remaining state claims be remanded to the Fourth Judicial District of the State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David Silva
Baber, Silva, and Grano Law Firm
Las Vegas, New Mexico

    *Attorney for Plaintiff*

Robert G. Castille
Castille & Ortiz, LLC
Los Alamos, New Mexico

    *Attorney for Defendants*